## LOCKWOOD *vs.* NELSON.

1. T. M. N. and A. M. C. in contemplation of marriage enter into a contract, by which it is covenanted and agreed, that the said T. M. N., the intended husband, on the consummation of the marriage, shall have and receive all the property of the said A. M. C., and in consideration thereof, and in lieu of dower, shall settle on the

said A. M. C. for her own proper use and benefit, free from his liabilities, a sum of money equal to the value of the property thus received, and charge his estate to that extent: *Held*, that on proof being made that the marriage was solemnized, and that the said T. M. N. thereupon received from the said A. M. C. property of the value of twenty thousand dollars, a deed of trust, afterwards executed, in consideration of the provisions of said contract, by the said T. M. N. to W. N. N., to secure to the said A. M. C. the payment of the said sum of twenty thousand dollars, is not voluntary, but is founded on a full and valuable consideration.

2. Where the *only* question raised on a deed of trust, by charges asked, is whether it is *voluntary*, or on *valuable consideration*, a charge in lieu of those requested, that if the jury believe from the evidence that certain facts existed, they constituted the *cestui que trust* a *bona fide* creditor, must be construed in reference to the question presented, and cannot be regarded as withdrawing from the jury the consideration of the *motive* which induced its execution.

3. The assent of creditors to a deed of trust for their security will be presumed, when no condition is imposed prejudicial to them, or restrictive of their rights.

Error to the Circuit Court of Tallapoosa. Tried before the Hon. Geo. W. Stone.

THIS was a trial of the right of property in three slaves, which, on the 12th day of April 1847, were levied upon under an attachment in favor of plaintiff in error against Thomas M. Nelson, and claimed by William N. Nelson, the defendant in error, as trustee of Anna Matilda Nelson, and of certain creditors of the said Thomas M. The plaintiff having made out a *prima facie* case, the claimant read in evidence a marriage contract, executed on the 19th December 1838, by the said Thomas M. and Anna Matilda, then Anna Matilda Carnes, by which, after the recital, that a marriage is about to be solemnized between the said Thomas M. and Anna Matilda, and that the latter is possessed of property to the value of twenty thousand dollars, all which, on the consummation of the marriage, the said Thomas M. is to have and receive as the said Anna Matilda's marriage portion, the said Thomas M. "in consideration of said portion and intended marriage, covenants and agrees to settle and charge his estate in the sum of twenty thousand dollars, for the benefit of the said Anna Matilda Carnes and her heirs, being a sum deemed equivalent to her

fortune," and "doth by these presents grant and settle on the said Anna Matilda Carnes and her heirs, out of his estate, the sum of twenty thousand dollars in lieu of dower, and the property received through her, for her own proper use and benefit, free from any liabilities of the said Thomas M. Nelson." In connection with this contract, it was proven that the marriage was consummated, and that the said Thomas M. thereupon received property of the said Anna Matilda to the value of twenty thousand dollars. The claimant also read in evidence a duly recorded deed of trust, executed to him by the said Thomas M. on the 22d September 1846, by which the said Thomas M, in consideration of the provisions of said marriage contract, conveyed to the claimant a number of slaves, among them a portion of those levied on, "to have and to hold in trust for the part payment of said marriage settlement." There was no proof, however, that the said Anna Matilda had ever accepted of the provision, made for her in this deed. The claimant further read in evidence a duly recorded deed of trust, executed to him by the said Thomas M., on the same day that the other was, by which, a number of slaves and other property, including a portion of the slaves in controversy, were conveyed to claimant, in trust to secure the payment of the debts due by the said Thomas M, to certain creditors therein named, and proof was made of the bona fides of the debts thus provided for, but it did not appear that the creditors had ever accepted of the provision made for them by this deed. The debt on which plaintiff's attachment was sued out, was contracted by the said Thomas M, in 1845. Upon this state of facts, the plaintiff's counsel requested the court to charge the jury:

1st. That the trust deed, of the 22d September 1846, for the benefit of Mrs. Nelson, was voluntary, fraudulent, and void—a mere donation, as against the creditors of the said Thomas M. Nelson whose demands were in existence at the time.

2d. That the trust deed, for the benefit of Mrs. Nelson, was but the execution of a power, revocable by the grantor at any time before its acceptance by her, and that the levy of the attachment, before such acceptance, is tantamount to a revocation by the grantor.

3d. That the trust deed, for the benefit of creditors, was but the execution of a power, revocable by the grantor, at any

time before acceptance by the beneficiaries, and that the levy of the attachment before such acceptance operates as a revocation.

The court refused to give either of these charges, but instructed the jnry, 1st That, if the said Thomas M, and Anna M, entered into the antenuptial contract of the 19th December 1838, and afterwards intermarried, and the said Thomas M. thereupon received property from the said Anna M, of the value of twenty thousand dollars, the said Anna M, then became a bona fide creditor of the said Thomas M, and the trust deed for her benefit would be upheld, provided it conveyed property of no greater value than twenty thousand dollars: 2d, That the law presumes the assent of the beneficiaries to the provision made for them in the respective deeds of trust, they being on their face beneficial to the creditors. To the refusal of the court to give each of the charges asked, and to each charge given, the plaintiff excepted and now assigns them, severally, as error.

RICE, MORGAN & HEYDENFELDT, for plaintiff:

1. The ante-nuptial agreement executed by Thomas M. Nelson and Anna M. Carnes, in 1838, is merely *executory;* it is not an *executed* contract and is not a marriage *settlement.* It is a mere *agreement to make a settlement.* But whether it be the one or the other, it is condemned by the law respecting marriage settlements. That law "requires a *fair motive,* as well as a valuable consideration, and the interest must be *actually declared and vested at the time of a settlement,* or it cannot prevail against the rights of honest creditors." Rundle v. Murgatroyd's assignees, 4 Dallas' Rep. 304.

2. A contract between *husband and wife previous to marriage,* for the settlement of the WIFE'S FORTUNE, is released by the marriage. This is *certainly* true in a court of law, and probably in a court of equity. Boatwright & Glaze v. Wingate, 3 Brevard's Rep. 423; Darcy v. Chute, 1 Cases in Chancery, 21; Acton v. Peirce, 2 Vern. Rep. 481, and cases in note 1.

3. The general principle is, that those contracts only are thus extinguished, which *may by possibility* be enforced or performed *during the marriage.* Gibson v. Gibson, 15 Mass. Rep. 111. But a provision made for the wife in contemplation of

24

Lockwood v. Nelson.

marriage, which BY THE TERMS OF IT, is *not* to take effect until *after the death* of the husband, or until *after the coverture ceases*, is not extinguished by the subsequent marriage. Gibson v. Gibson, 15 Mass. Rep. 111; Mitchel v. Mitchel, 4 B. Monroe's Rep. 380.

4. It is a settled and uniform rule, that settlements made upon a wife and children by persons who have not a sufficient estate to pay all their debts, are void against creditors. Rundle v. Murgatroyd's assignees, 4 Dal. Rep. 304; Read v. Livingston, 3 Johns. Ch. Rep. 481.

5. The deed to the claimant " for the *part payment* of the above mentioned marriage contract" &c., cannot be valid against the then existing creditors of the grantor, until the assent of the beneficiary was shown.

6. The affirmative charge given by the court is erroneous in several particulars, to wit: 1st, It precluded the jury from any enquiry into *the intent*—the *bona fides*, in making the deed to the claimant fôr the benefit of Mrs. Nelson. 2d, It precluded the jury from any enquiry into the condition of the grantor—whether he was solvent or insolvent at the date of the trust deeds. 3d, It assumed that if Mrs. Nelson was a bona creditor, that the deed must be held good, although it may have been executed with intent to defraud creditors, and although there may have been a secret trust in favor of the grantor, and although the property *did remain continuously in the possession* of the grantor. 4th, It assumed that Mrs. Nelson was a *bona fide creditor*, merely because *her fortune*, at the time of her marriage was $20,000, and was received by her husband, under the agreement between herself and husband executed *before the marriage*, whereas the cases before cited, show the law to be otherwise than as charged by the Circuit Court.

L. E. PARSONS, for defendant:

1. Concede the marriage settlement to be a mortgage, and that in consequence of the neglect to record it, the mortgage is lost, *yet the debt remains.* This *debt* is secured by the trust deed.

2. If the marriage settlement is a mortgage, its lien is not lost because of the failure to record it. Adams v. Broughton 13 Ala. Rep. 31.

3. But this marriage settlement is not a mortgage. It is an acknowledgment on the part of Thomas M. Nelson, that he has received property to the value of twenty thousand dollars, ·for which he agrees to settle on her, out of his estate, (viz, *pay* her out of his estate) that sum, and in lieu of dower also. This is an indebtedness which will support the subsequent conveyance to W. N. Nelson. The assent of Mrs. Nelson to this deed will be presumed—Elms v. Sutherland, 7 Ala. 262; Gazzam v. Poyntz, 4 Ala. 374. To render an ante-nuptial settlement void as a fraud upon creditors, it is necessary both parties should have notice of the·fraud—Andrews & Brothers v. Jones, et al. 10 Ala. 400.

4. The trustee has full power to *pay* the debt in such manner as the beneficiary may desire. The authority conferred on him for this purpose is general, and this authorises him to use all legal and proper means to that end. He is to hold it in *trust* for the *part payment* of the marriage settlement. The object of the trust is " to pay" and the trustee is not limited to any particular mode or manner of payment. If the deed contained a power of sale, its terms would have to be followed; but where no terms are imposed and the power to do the act .is given, the trustee may select—Chambers v. Mauldin, 4 Ala. Rep. 477.

5. But the right to make this conveyance is expressly provided for in the marriage contract, and the acceptance of it by the wife, is a part of the contract, *provided this deed*, in the opinion of the court, amounts to a charge on his estate.

CHILTON, J.—By the ante-nuptial contract entered into between Thomas M. Nelson and Anna M. Nelson, then Anna M. Carnes, it was agreed, that the said Thomas M. should have the property of which his said intended wife was then possessed, amounting in value to twenty thousand dollars, and that in consideration of that, and in lieu of the dower of his said intended wife, he covenanted " to settle and charge his estate in the sum of twenty thousand dollars, for the benefit of the said Anna M.—being a sum deemed equivalent to her fortune." The deed further provides " that the said Thomas M. Nelson doth by these presents grant and settle on the said Anna Matilda Carnes out of his estate, the sum of twenty

thousand dollars in lieu of dower, and of the property receiv-
ed through her, for her own proper use and benfit, free from
any liabilities of the said Thomas M. Nelson." This deed
was executed the 19th December 1838. The proof shows
that the marriage contemplated by the deed, was afterwards
solemnized between the parties, and that the said Thos. M. actu-
ally received property to the value of twenty thousand dollars
from his wife upon the marriage.

The manifest intention of the parties to this instrument was,
that the husband should settle upon the wife, to her sole and
separate use, the sum therein specified, and not having paid
the money before the consummation of the marriage, it is very
clear that a court of equity would hold him as a trustee for
his wife, and chargeable with that sum as for her separate es-
tate. Atherly on Marriage Settlements, 90 *et seq.* He was
in fact her debtor, and was under both a moral and legal ob-
ligation to comply with the terms of the contract, upon the
faith of which, it is fair to presume, the wife was, at least in
part, influenced to enter into the marital relation. There was
then no valid objection to securing by the husband, after the
coverture, the debt thus due by a conveyance of property to a
trustee for her benfit, as was done by the deed of 22d Sep-
tember 1846 to William N. Nelson, the claimant. This deed
was not therefore voluntary, as is assumed in the first charge
asked to be given by the Circuit Court to the jury on behalf
of the plaintiff in error. The security was but a means of
consummating the settlement—5 Ves. 275. The rule is too
well settled to admit of discussion, that if a party do that which
a court of equity would compel him to do, the court will hold
it good. And the authorities to which we are cited by the
counsel for the defendant in error establish beyond doubt, that
a court of equity would enforce the wife's right to the settle-
ment provided for by the ante-nuptial contract. The wife in
this case has but an equitable interest, the legal title being
vested in the trustee, but her equity is a sufficient considera-
tion to support the deed.

2. The charge of the court, that if the jury believed certain
enumerated facts existed, they constituted the wife a *bona fide*
creditor of the husband, we think is free from error, and can-
not be regarded as withdrawing from the jury the considera-

tion of the motive which prompted to the execution of the trust deed. The charge has reference to the *consideration* of the deed, and was given in lieu of one which was denied, and which assumed it to be voluntary. The questions raised below, were "upon the construction of the deed," and no question of fraud in fact was made by the charges asked, and hence none were concluded by the first charge given.

3. The remaining two charges which were prayed come directly within the influence of the principle several times decided by this court, and which must be considered as settled law, viz: that where a trust deed is executed for the security of creditors, and provides that the creditor should do or omit any thing whatever, the deed is revocable until the creditor assents to it; but where such is not the case—where the deed provides a security, without imposing any terms upon the creditor, or in any manner postponing the collection of his demand, the provision being manifestly for his benefit, the law implies his assent, and the deed is not revocable by the grantor. Elmes v. Sutherland, 7 Ala. Rep. 262; 4 ib. 374; Nelson, et al. v. Dunn, 15 Ala. Rep. 501. Applying the rule thus settled, to the case before us, it is very clear that the court did not err in refusing the two charges which assume, that the deeds of trust under which the claimant held the property required the assent of the *cestui que trusts* before the levy of the attachment, in order to render them valid. Neither of the deeds postpone the time of payment of the demands secured by them, and no condition whatever is imposed upon the creditor. They were then, upon their face beneficial to the creditors, and needed not their assent to give them vitality.

The charges given but affirm the law, as we have above laid it down, and were strictly correct. Havihg noticed all the points presented to the court below, and being unable to discover any error, the judgment must be affirmed.